IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| COTTMAN TRANSMISSION SYSTEMS, LLC, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 5:16-cv-00090 ) |
| CAN-AM II HOLDINGS, LLC, RICHARD SKOW, DENNIS BERGERON, and DANIEL SIMON | ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Cottman Transmission Systems, LLC ("Cottman"), by its attorneys, and for its Complaint against defendants, states as follows:

## PARTIES

1. Cottman is a Delaware limited liability company headquartered at 201 Gibraltar Road, Suite 150, Horsham, Pennsylvania 19044. None of its members is a citizen or resident of North Carolina.

2. Defendant Can-Am II Holdings, LLC ("Can-Am") is a North Carolina limited liability company. Its members are defendants Richard Skow and Dennis Bergeron, each of whom is a citizen and resident of North Carolina (defendants Can-Am, Skow, and Bergeron are referred to collectively as the "Can-Am Defendants"). The Can-Am Defendants operate an automotive transmission repair center that they improperly hold out to the public as an

authorized Cottman brand automotive transmission repair center at 515 Village Court, Garner, North Carolina 27529 (the "Infringing Business").

3. Defendant Daniel Simon is a citizen and resident of North Carolina. He is the former franchisee of the authorized Cottman brand automotive repair center at 515 Village Court, Garner, North Carolina 27529 (the "Cottman Center").

## JURISDICTION AND VENUE

4. The Court has original subject matter jurisdiction of this action under 28 U.S.C. § 1331, 1338, and 1367, in that this is a civil action relating to trademarks, and wherein all other claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

5. This Court also has original subject matter jurisdiction under 28. U.S.C. § 1332(a) in that this action is a civil action between citizens of different States, wherein the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391 because defendants reside, and a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred, in this judicial district.

## GENERAL ALLEGATIONS

**A. The Cottman name and marks.**

7. Since 1962, Cottman has been engaged in the business of franchising automotive transmission repair centers throughout the United States.

8. As a result of extensive experience in the automotive business, Cottman has developed and perfected certain methods, procedures, and techniques of repairing, rebuilding, and servicing transmissions and other total auto care services.

9. Cottman has developed, and continues to develop, a comprehensive system for conducting operations in the automotive business which consists, in part, of the use of the Cottman trade names and trademarks, Cottman's methods, procedures, and techniques, and a network of centers devoted exclusively to the repair of automotive transmissions and total auto care.

10. To identify the source, origin, and sponsorship of Cottman's products and services, and to distinguish those products and services offered and sold by others, Cottman and its authorized franchisees have extensively used certain trademarks, trade names, and service marks, including the "Cottman" mark, "Cottman Total Auto Care" mark, "Cottman Transmission" mark, and related marks ("Cottman Marks"), in connection with the operation of authorized Cottman automotive transmission repair centers.

11. Cottman is the owner of the Cottman Marks and licenses them to authorized Cottman franchisees for use solely in connection with their operation of franchised Cottman automotive transmission repair centers pursuant to written license agreements with Cottman.

12. The Cottman Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registration of the Cottman Marks continues in full force and effect.

13. Cottman has given notice to the public of the registration of the Cottman Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that it and its authorized franchisees remain the exclusive users of the Cottman Marks.

14. Cottman and its authorized franchisees have continuously used the Cottman Marks in interstate commerce in connection with the operation of Cottman automotive transmission repair centers and the promotion, offer, and sale of the products and services they offer throughout the United States, since the date of their registration.

15. Cottman and its authorized franchisees have extensively advertised and promoted the Cottman Marks and the products and services offered in association with those marks throughout the United States and through various media. As a result of such efforts and the substantial sums spent in connection therewith, the products and services offered at Cottman automotive transmission repair centers under the Cottman Marks have been met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

**B. Simon enters into Cottman license agreement.**

16. Effective April 21, 2011, Simon, as franchisee, entered into a written license agreement with Cottman for the operation of the Cottman Center for an initial fifteen year term (the "License Agreement"). A true and correct copy of the License Agreement is attached as **Exhibit A.**

17. On June 22, 2012, Simon entered into a security agreement and promissory note with Cottman. The note is for a principal amount of $122,023.80 and becomes immediately due

and payable if the License Agreement terminates for any reason. A true and correct copy of the security agreement and promissory note are attached as **Exhibit B.**

18. The security agreement grants Cottman a secured interest in the Cottman Center's accounts, inventory, automobiles, leasehold rights, contract rights, machinery and equipment which are or will become fixtures and store fixtures, now owned or thereafter acquired by Simon, and all proceeds therefrom (the "Collateral").

19. Cottman perfected its security interest in the Collateral by filing a Uniform Commercial Code Financing Statement naming Simon as "Debtor," Cottman as "Secured Party," and describing the Collateral as set forth in the previous paragraph, with the North Carolina Secretary of State, file number 20120061340M, on June 28, 2012. A true and correct copy of the Uniform Commercial Code Financing Statement is attached as **Exhibit C**.

20. Under the License Agreement, Simon agreed to, among other things, pay Cottman a weekly license fee equal to 7.5% of the Cottman Center's Gross Business (as that term is defined in the License Agreement), pay Cottman a weekly advertising fee of $765, and not transfer the License Agreement or ownership of the Center without complying with the transfer process set forth in the License Agreement

21. The License Agreement provides for termination by Cottman in the event, among other things, Simon abandons the Cottman Center, fails to pay any amounts owed under the License Agreement (after notice and 10 days to cure), or fails to cure any other default under the License Agreement (after notice and 30 days to cure).

22. In the event of termination, Simon expressly agreed that he would, among other things:

5

a. Promptly pay all past due amounts owed under the License Agreements;

b. Immediately discontinue the use of all Cottman trademarks, signs, structures, forms of advertising, telephone listings and service, manuals, software and all materials and products of any kind which are identified or associated with the Cottman brand or its proprietary system and to return all such materials and products to Cottman;

c. Not disclose Cottman's confidential information, trade secrets, or any methods, procedures, or techniques of any kind relating to any aspect of the operation of the Centers, Cottman, or its proprietary system; and

d. Comply with his post-termination obligations, including a noncompetition covenant.

23. Simon also agreed to pay all expenses, including legal expenses, in connection with any legal proceeding initiated by Cottman to enforce its rights arising out of the License Agreement.

## C. Simon and the Can-Am Defendants conspire to materially breach the License Agreements and Note.

24. On September 15, 2015, Simon transferred, or attempted to transfer, ownership of the Cottman Center and License Agreement to Can-Am without Cottman's approval and without complying with the transfer process set forth in the License Agreement.

25. Can-Am knew that a License Agreement existed between Cottman and Simon and that any purported transfer required, among other things, Cottman's written consent.

26. Defendants never requested or obtained Cottman's written approval, and thereafter Can-Am never became an authorized Cottman franchisee.

27. Simon also failed to pay amounts owed to Cottman under the License Agreement and promissory note.

28. In December 2015, Cottman sent a notice to Simon identifying these defaults and requiring Simon to cure them within a certain cure period as specified in the License Agreement.

29. On January 20, 2016, the License Agreement terminated due to Simon's complete and total breach. Cottman has since learned that in addition to the defaults listed in the December 2015 notice, Simon also abandoned operation of the Cottman Center.

30. Cottman at all times fully performed its obligations under the License Agreement.

**D. Can-Am Defendants' unauthorized use of the Cottman Marks.**

31. Cottman has demanded that the Can-Am Defendants de-identify the Cottman Center, return Cottman's proprietary materials and confidential information, and allow Cottman to recover possession of the Collateral.

32. Nevertheless, the Can-Am Defendants continue to operate the Infringing Business at the same location as the former Cottman Center and to use the Cottman Marks in connection with the Infringing Business, falsely holding their automotive transmission repair center out to the public as an authorized and authentic Cottman center when it is not.

# COUNT ONE

## TRADEMARK INFRINGEMENT
### (against Can-Am Defendants)

33. Cottman repeats and realleges ¶¶ 1 through 32 of its Complaint as and for this ¶ 33, as if fully set forth herein.

34. The Can-Am Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of the Cottman Marks, and have caused and are likely to continue to cause consumer confusion or mistake and to deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

35. The Can-Am Defendants' misconduct has been, and continues to be, knowing and willful.

36. As a direct and proximate result of the Can-Am Defendants' infringement, Cottman has suffered and, unless the Can-Am Defendants' infringement is enjoined, will continue to suffer actual, substantial, and irreparable harm, including without limitation diminution in the value of the Cottman Marks, diminution in the value of its goodwill and reputation, and incalculable lost revenues and profits.

37. Cottman has no adequate remedy at law because the Cottman Marks are unique and represent to the public the Cottman identity, reputation, and goodwill, such that damages alone cannot fully compensate Cottman for defendants' misconduct.

38. Unless enjoined by the Court, the Can-Am Defendants will continue to use and to infringe the Cottman Marks to Cottman's irreparable injury. This threat of future injury to Cottman's business, identity, goodwill, and reputation requires injunctive relief to prevent the

Can-Am defendants' continued use of the Cottman Marks, and to ameliorate and mitigate Cottman's injuries.

## COUNT TWO

### UNFAIR COMPETITION
### (against Can-Am Defendants)

39. Cottman repeats and realleges ¶¶ 1 through 38 of its Complaint as and for this ¶ 39, as if fully set forth herein.

40. The Can-Am Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or mistake, and to deceive others, as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristic, qualities, or geographic origin of the products and services being offered and sold by the Can-Am Defendants, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41. The Can-Am Defendants' misconduct has been, and continues to be, knowing and willful.

42. As a direct and proximate result of the Can-Am Defendants' infringement, Cottman has suffered and, unless the Can-Am Defendants' infringement is enjoined, will continue to suffer actual, substantial, and irreparable harm, including without limitation diminution in the value of its trade dress, diminution in the value of and damage to its goodwill and reputation, and incalculable lost revenues and profits.

43. Cottman has no adequate remedy at law because the Cottman Marks are unique and represent to the public the Cottman identity, reputation, and goodwill, such that damages alone cannot fully compensate Cottman for the Can-Am Defendants' misconduct.

44. Unless enjoined by the Court, the Can-Am Defendants will continue to compete unfairly with Cottman to its irreparable injury. This threat of future injury to Cottman's business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition, and to ameliorate and mitigate Cottman's injuries.

## COUNT THREE

### BREACH OF LICENSE AGREEMENT
### (against Simon)

45. Cottman repeats and realleges ¶¶ 1 through 44 of its Complaint as and for this ¶ 45, as if fully set forth herein.

46. Simon's actions, including without limitation his failure to pay past due amounts owed under the License Agreement, failure to operate his franchised Cottman Center in accordance with the terms of the License Agreement and for the full term thereof, and transfer or attempted transfer of the Cottman Center, constitute material breaches of the License Agreement.

47. As a direct and proximate result of Simon's material breaches and the resulting termination for cause of the License Agreement, Cottman has sustained substantial damages in excess of $75,000 exclusive of interest and costs in an amount to be proved at trial.

## COUNT FOUR

### BREACH OF PROMISSORY NOTE
### (against Simon)

48. Cottman repeats and realleges ¶¶ 1 through 47 of its Complaint as and for this ¶ 48, as if fully set forth herein.

49. Simon's failure to pay amounts due and owing under the terms of the promissory note constitutes a material default of the note.

50. As a direct and proximate result of Simon's material default of the promissory note, Cottman has sustained damages in an amount to be proved at trial, including the principal balance owed plus interest.

## COUNT FIVE

### TORTIOUS INTERFERENCE WITH CONTRACT
### (against Can-Am Defendants)

51. Cottman repeats and realleges ¶¶ 1 through 50 of its Complaint as and for this ¶ 51, as if fully set forth herein.

52. The Can-Am Defendants knew that a valid License Agreement existed between Cottman and Simon.

53. The Can-Am Defendants intentionally, and without justification, induced Simon to breach the License Agreement.

54. As a direct and proximate result of the Can-Am Defendants' willful and wanton actions, Cottman has sustained damages in an amount to be proved at trial.

# COUNT SIX

## POSSESSION OF COLLATERAL
### (against Can-Am Defendants)

55. Cottman repeats and realleges ¶¶ 1 through 54 of its Complaint as and for this ¶55, as if fully set forth herein.

56. Cottman has a valid, perfected security interest in the Collateral.

57. Under the terms of the promissory note, Cottman is entitled to immediate possession of the Collateral upon the occurrence of default under the promissory note.

58. Upon information and belief, the Collateral is located at the Infringing Business and the Can-Am Defendants exclusively possess and control the Collateral.

59. Pursuant to N.C. Gen. Stat. § 1-230, Cottman is entitled to have the collateral repossessed and placed in Cottman's possession or in the possession of one of its agents or assigns, to be disposed of in a commercially reasonable manner, and the proceeds derived therefrom applied to the balance due.

## PRAYER FOR RELIEF

**WHEREFORE,** Cottman respectfully prays for the following relief:

A. Preliminary and permanent injunctive relief enjoining the Can-Am Defendants, and each of them, and their respective agents, servants and employees, and all persons in active concert or participation with them from:

1. Using any of the Cottman Marks, or any trademark, service mark, logo, trade name, or elements of design and décor that is confusingly similar to the Cottman Marks;

2. Otherwise infringing the Cottman Marks;

   3. Passing off any products or services as those of authorized Cottman franchisees or as genuine Cottman products or services;

   4. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products, or services;

   5. Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with Cottman, or with any of its products or services; and

   6. Unfairly competing with Cottman, in any manner;

B. An order that the Can-Am Defendants, and each of them, account and pay over to Cottman all gains, profits and advantages derived by them as a result of their infringement of the Cottman Marks and unfair competition, to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

C. An order that the Can-Am Defendants, and each of them, pay to Cottman such damages as Cottman has sustained by reason of the Can-Am Defendants' trademark infringement and unfair competition, and that, because of the willful nature of such infringement, judgment in Cottman's favor in an amount equal to three times the amount of such damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. 1117;

D. An award against Simon for damages for Simon's breaches of the license agreement, including past due amounts owed, lost future profits, and damages

arising out of Simon's unauthorized transfer in an amount to be proved at trial in excess of $75,000, exclusive of interest and costs;

E. An award against the Can-Am Defendants for compensatory and punitive damages arising out of their intentional interference with the License Agreement;

F. An award against Simon for damages for Simon's default of the promissory note, including the principal amount owed plus interest, in an amount to be proved at trial;

G. An order granting possession of the Collateral at the Infringing Business to Cottman;

H. An award of the costs and expenses, including reasonable attorneys' fees, incurred by Cottman in connection with this action; and

I. Such other and further relief as the Court deems just and proper.

Dated: February 25, 2016      Respectfully submitted,

**GOLDBERG SEGALLA LLP**

/s/ Brady A. Yntema
Brady A. Yntema
N.C. State Bar No.: 25771
800 Green Valley Road, Suite 302
Greensboro, NC 27408
Telephone: (336) 419-4900
Facsimile: (336) 419-4950
Email: byntema@goldbergsegalla.com

-and-

Fredric A. Cohen (*pro hac vice pending*)
Aaron-Michael Sapp (*pro hac vice pending*)
CHENG COHEN LLC
311 North Aberdeen Street, Suite 400
Chicago, Illinois 60607
Telephone: (312) 243-1717
Facsimile: (312) 277-3961
E-mail: fredric.cohen@chengcohen.com
asapp@chengcohen.com

*Attorneys for Plaintiff*
*Cottman Transmission Systems, LLC*